**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MIKUL KLEHM,** | § | **CIVIL ACTION NO. 4:22-CV-01226** |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **JUDGE CHARLES ESKRIDGE** |
| **RAWLTYN JORDAN HART, et al.,** | § | **("JURY REQUESTED")** |
| *Defendants,* | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT HARRIS COUNTY'S MOTION TO DISMISS**

<br>

DAVID BLEAKNEY

Texas Bar No. 24103798

100 N. Velasco

Angleton, TX 77515

Telephone:  (512) 541-8251

Facsimile:  (512) 532-7964

**ATTORNEY FOR PLAINTIFF**

**Date: October 18, 2022**

## TABLE OF CONTENTS

Table of Contents...........................................................................................................ii

Table of Authorities..................................................................................................... iii

Nature & Stage of the Proceeding ...............................................................................1

Statement of Issues ......................................................................................................1

Introduction ................................................................................................................3

Summary of the Argument ...........................................................................................4

Claims, Ommission, and Extrinisic Eviddnce In Defendant's Motion....................4

Argument & Authorities ..............................................................................................9

    1.   Harris County is not entitled to dismissal of the Monell Claims ……………………

        a)   Harris County's use of TCOLE minimum standards for hiring, supervision, disciplinary and/or retention decisions regarding patrol deputies like Hart.  Doc. 18, ¶¶ 24(h), 35(e) .......................................................................................19

        b)   Deficient timely training, inadequate hiring standards, deficient discipline and retention policies, the minimal corrective actions in investigations of deputies. Doc. 18, ¶¶ 23(g), 35e(v). ............................................................................22

        c)   Allowing the shooting of a suspect (excessive force) for merely being in possession of a firearm. Doc. 18, ¶¶ 27iii(2), 35(a).......................................... 27

        d)   A systemic unwillingness to address use of excessive force. Doc. 18, ¶¶ 24(a), 35(c) .......................................................................................................... 30

        e)   Seeking a no-bill from a grand jury when a deputy has used excessive force. Doc. 18, ¶¶ 25, 35(b). .......................................................................................... 35

        f)   Failing to hold deputies accountable for violations of departmental policy "condones and encourages excessive force." Doc. 18, ¶¶ 23, 35(d) .............37

    2.   Plaintiff stated a claim for ratification against Harris County ................................. 39

    3.   Plaintiff is not barred from recovering punitive damages in this case ....................43

Conclusion & Prayer ..................................................................................................... 44

Certificate of Compliance............................................................................................ 45

Certificate of Conference............................................................................................. 45

Certificate of Service ................................................................................................... 45

# TABLE OF AUTHORITIES

*Taylor v. Books A Million, Inc.*,

    296 F.3d 376, 378 (5th Cir. 2002) ............................................................. 2, 12

*U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*,

    336 F.3d 375, 379 (5th Cir. 2003) (internal citation omitted) ......................... 2

*True v. Robles*,

    571 F.3d 412, 417 (5th Cir. 2009) ................................................................... 2

*Leal v. McHugh*,

    731 F.3d 405, 410 (5th Cir. 2013) ................................................................... 2

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544, 570 (2007) ........................................................................... 2, 13

*Montoya v. FedEx Ground Package Sys., Inc.*,

    614 F.3d 145, 148 (5th Cir. 2010) ................................................................... 2

*Ashcroft v. Iqbal*,

    556 U.S. 662, 678 (2009) ........................................................................... 2, 14

*Wilson v. Birnberg*,

    667 F.3d 591, 595 (5th Cir. 2012) ......................................................... 2, 14, 24

*Cinel v. Connick*,

    15 F.3d 1338, 1341 (5th Cir. 1994) ........................................................... 2, 24

*Scheuer v. Rhodes*,

    416 U. S. 232, 236 (1974)). .............................................................................2

*Jackson v. Procunier*,

    789 F.2d 307, 309 (5th Cir. 1986) ................................................................... 2

*Morin v. Caire*,

    77 F.3d 116, 120 (5th Cir. 1996) ..................................................................... 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

    551 U.S. 308, 322 (2007). ......................................................................... 3, 14

*Rivera v. City of Pasadena*,

    555 F. Supp. 3d 443, 453 (S.D. Tex. 2021) ..................................................... 3

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
  920 F.3d 890, 900 (5th Cir. 2019) ................................................................... 3

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 248 (1986) ............................................................................. 3

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144, 159 (1970) ............................................................................. 3

*Haskett v. T.S. Dudley Land Co.*,
  648 F. App'x 492, 496-97 (5th Cir. 2016) ....................................................... 8

*Bosarge v. Mississippi Bureau of Narcotics*,
  796 F.3d 435, 440 (5th Cir. 2015) ................................................................. 8

*Goines v. Valley Cmty. Servs. Bd.*,
  822 F.3d 159, 168 (4th Cir. 2016) .................................................................8

*Gutierrez v. City of San Antonio*,
  139 F.3d 441, 446 (5th Cir. 1998) ............................................................... 11

*Pineda v. City of Houston*,
  291 F.3d 325 (5th Cir. 2002) ...................................................................... 14

*Littell v. Houston Independent School District*,
  213 F. Supp. 3d 849 (5th Cir. 2016)............................................................. 14

*Thomas v. City of Galveston*,
  800 F. Supp. 2d 826, 841 (S.D. Tex. 2011) ..................................... 15, 16, 17, 24, 27, 32

*Piotrowski v. City of Houston*,
  237 F.3d 567, 578 (5th Cir. 2001)................................................................ 19

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978)............................................................... 1, 19, 24, 33, 39

*Okon v. Harris Cnty. Hosp. Dist.*, 426 F. App'x
  312, 316 (5th Cir. 2011) ............................................................................ 19

*Hutcheson v. Dallas Cnty.*,
  994 F.3d 477, 482 ..................................................................................... 21

*Connick v. Thompson*,
  563 U.S. 51, 62 (2011)) ............................................................................. 21

*Cooper v. Dillon*,

403 F.3d 1208, 1222 (11th Cir. 2005) ............................................................... 21

*Richman v. Sheahan*,

270 F.3d 430, 439 (7th Cir. 2001) ................................................................. 21

*DePiero v. City of Macedonia*,

180 F.3d 770, 786 (6th Cir. 1999) .................................................................21

*Brotherton v. Cleveland*,

173 F.3d 552, 563-67 (6th Cir. 1999) ...........................................................21

*Doby v. DeCrescenzo*,

171 F.3d 858, 868 (3d Cir. 1999) .................................................................21

*McKusick v. City of Melbourne*,

96 F.3d 478, 484 (11th Cir. 1996) ................................................................ 21

*Garner v. Memphis Police Dep't*,

8 F.3d 358, 364 (6th Cir. 1993), *cert. denied*, 114 S. Ct. 1219 (1994) ....................... 21

*Hale O Kaula Church v. Maui Planning Commission*,

229 F.3d 1056, 1069 (D. Haw. 2002) ........................................................ 21

*Allen v. Leis*,

154 F. Supp.2d 1240, 1263 (S.D. Ohio 2001) ........................................... 21

*Community Health Care Association of New York v. DeParle*,

69 F. Supp.2d 463, 475 (S.D.N.Y. 1999). ................................................. 21

*Grandstaff v. Borger*,

767 F.2d 161, 171–72 (5th Cir. 1985) ....................................................... 25

*City of Canton v. Harris*,

489 U.S. 378, 388-89 (1989) ............................................................... 25, 31

*Sanders–Burns v. City Of Plano*,

594 F.3d 366, 382 (5th Cir.2010). ............................................................. 25

*Tennessee v. Garner*,

471 U.S. 1 (1985) ......................................................................... 28, 29, 31

*Bennett v. Murphy*,

274 F.3d133, 136 (3d Cir. 2002) ............................................................... 29

*Peterson v. City of Fort Worth*,

588 F.3d 383 (5th Cir. 2009)........................................................31, 32, 35, 42

*Estate of Davis ex rel. McCully v. City of N. Richland Hills,*
    406 F.3d 375, 383 (5th Cir. 2005)................................................................31, 32, 33, 35

*Holman v. Fairchild,*
    564 F. Supp. 3d 531 (S.D. Tex. 2021),.......................................................33, 34, 35, 38

*Groden v. City of Dall.,*
    826 F.3d 280, 284 (5th Cir. 2016)..................................................................................35

*Wiggins v. Lowndes Cty.,*
    363 F.3d 387, 390 (5th Cir. 2004)................................................................................. 36

*Stegmaier v. Trammell,*
    597 F.2d 1027, 1035 (5th Cir. 1979)..............................................................................36

*Neal v. State,*
    150 S.W.3d 169, 173 (Tex. Crim. App. 2004) ...............................................................36

*State v. Malone Serv. Co.,*
    829 S.W.2d 763, 769 (Tex.1992) ...................................................................................36

*Bordenkircher v. Hayes,*
    434 U.S. 357, 364 (1978) ...............................................................................................36

*Jett v. Dallas Independent. School Dist.,*
    491 U.S. 701 (1989). .................................................................................................... 36

*Crane v. Texas,*
    759 F.2d 412, 429 (5th Cir. 1985) .................................................................................36

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986). .....................................................................................................37

*Young v. Bd. of Supervisors of Humphreys Cnty.,*
    927 F.3d 898, 903 (5th Cir. 2019) ................................................................................ 39

*City of St. Louis v. Praprotnik ,*
    485 U.S. 112, 127 (1988) .................................................................................. 39,41, 43

*Milam v. City of San Antonio,*

     113 F. App'x 622, 628 (5th Cir. 2004) ................................................ 39, 40, 41, 42, 43

*World Wide St. Preachers Fellowship v. Town of Columbia ,*

     591 F.3d 747, 755 (5th Cir. 2009). .......................................................................... 40

*Smith v. Wade,*

     461 U.S. 30 (1983) ..................................................................................................... 44

**Rules**

Fed. R. Civ. P. 12(B)(6) .................................................................................................. 1, 44

Fed. R. Civ. P. 12(c) ............................................................................................................. 3

Fed. R. Civ. P. 12(d) .......................................................................................................... 3, 9

Fed. R. Civ. P. 56 ............................................................................................................... 2, 9

Federal Rule of Evidence 201 ............................................................................................ 3, 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MIKUL KLEHM,** | § | **CIVIL ACTION NO. 4:22-CV-01226** |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **JUDGE CHARLES ESKRIDGE** |
| **RAWLTYN JORDAN HART, et al.,** | § | **("JURY REQUESTED")** |
| *Defendants,* | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT HARRIS COUNTY'S MOTION TO DISMISS

COMES NOW, PLAINTIFF MIKUL KLEHM (**"Plaintiff"**), responding to Defendant Harris County's Fed. R. Civ. P. 12(b) Motion to Dismiss (**"Motion"**). Plaintiff asks that this Court deny the Motion and respectfully shows the Court as follows:

### I.    NATURE AND STATE OF PROCEEDING OF THE CASE

The Original Complaint of this civil rights case was filed on April 16, 2022, and a First Amended Complaint was filed on September 13, 2022.  The present document responds to Defendant's motion to dismiss, filed September 27, 2022

### II.    STATEMENT OF ISSUES

1. Is Harris County entitled to dismissal of Plaintiff's claims for liability under *44,* ?

2. Did Plaintiff fail to state a claim for ratification against Harris County?

3.  Is Plaintiff barred from recovering punitive damages against the County?

## III.    STANDARD OF REVIEW

"When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint and construes them in light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see also U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (internal citation omitted)*; see also True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009). "Dismissal is appropriate only if the complaint fails to plead 'enough facts to state a claim of relief that is plausible on its face.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Dismissal is improper if the allegations support relief on any possible theory." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) (quotation marks omitted) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994)).  "[O]f course, a wellpleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U. S. 232, 236 (1974)).

A Rule 12(b)(6) motion to dismiss must be evaluated solely on the basis of the pleadings.  *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).  "[C]ourts must consider the complaint in its entirety, as

well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."  *Rivera v. City of Pasadena*, 555 F. Supp. 3d 443, 453 (S.D. Tex. 2021) (citing *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  Rule 56 of the Federal Rules of Civil Procedure authorizes this Court to grant judgment as a matter of law where there is no genuine issue as to any material fact. An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Accordingly, the moving party must establish that no such issue remains for trial, even if the evidence is viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970) (holding that "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact.")

## IV.   INTRODUCTION

Plaintiff adopts, incorporates, restates, and re-alleges each fact alleged in Plaintiff's First Amended Complaint, Doc. 18. The First Amended Complaint describes the following narrative: Plaintiff was a passenger in a car that was being pulled over by Defendant Deputy Hart for failure of the occupants to wear a seatbelt. Fearing an encounter with police, Plaintiff exited the vehicle and ran forward along a residential fence line away from Deputy Hart's vehicle. Seeing Plaintiff flee, Deputy Hart stopped his patrol vehicle and chased after Plaintiff. Plaintiff turned from the fence line to run across the road, and Deputy Hart continued to pursue. Deputy Hart did not try any methods of warning or sublethal force in order to stop Plaintiff. When Plaintiff reached the middle of the road, Deputy Hart shot at Plaintiff from the rear four times, hitting him in the back and legs. Plaintiff fell and rolled to the edge of the road, where he laid still on his back with his empty arms outstretched in order to surrender. Deputy Hart jogged slowly over to where Plaintiff lay neutralized and shot Plaintiff again in the stomach. Throughout this incident, Deputy Hart had no reason to believe that Plaintiff was armed or was a threat to anyone, and the force he used was objectively unreasonable under the circumstances.

Deputy Hart has a well-documented history of excessive force that the Harris County Sheriff's Office had actual or constructive knowledge of at the time of this incident. However, Deputy Hart believed he could get away with objectively unreasonable force because Harris County never took corrective action on any of Deputy Hart's previous excessive force incidents, nor did it take corrective action on similar uses of force involving Deputy Hart's colleagues. Deputy Hart was encouraged by Harris County to use excessive force because Harris County consistently ratifies the use of excessive force and praises its

deputies when they use excessive force. Deputy Hart had reason to believe Harris County would ratify and praise his use of excessive force again after this incident—which it did when a Harris County spokesperson told the news that Deputy Hart did a "great job." Harris County policymakers had actual and constructive knowledge of systemic constitutional violations involving the use of excessive force by Sheriff's deputies, but had an official policy of using the same hiring, training, discipline, and retention standards that led to the systemic constitutional violations in the first place. These official policies led to the deficient training, supervision, discipline, and retention of Deputy Hart which caused this incident. Finally, Harris County policymakers have an unofficial custom of protecting Sheriff's deputies like Hart from accountability by shielding them from investigations and criminal and civil liability by withholding relevant information from investigators and grand juries. Harris County does this to protect itself from liability and embarrassment, recklessly indifferent to the rights of the citizens it is supposed to protect and serve. Harris County's lack of accountability encourages its deputies to continue their systemic and widespread use of excessive force, which they have learned through poor training and the accepted culture within the Harris County Sheriff's Office.

V.    SUMMARY OF ARGUMENT

Defendant's Motion contains or pointedly implies facts not included in the pleadings; ignores, mischaracterizes, and misinterprets facts which are in the pleadings; and mischaracterizes caselaw to support Defendant's legal conclusions. Defendant's arguments are inappropriate for a 12(b)(6) motion to dismiss. If Defendant's arguments

are considered as a motion for summary judgment, that motion should be denied because a genuine issue of those material facts exists.

Plaintiff has made factual allegations which satisfy all of the necessary elements under a *Monell* claim against Defendant, and has further made factual allegations which satisfy all of the elements of a ratification claim against Defendant.

Finally, Plaintiff has made factual allegations that could lead a reasonable jury to find that Plaintiff is entitled to punitive damages against nonmoving Defendant Rawltyn Hart.

## VI.   CLAIMS, OMISSIONS, AND EXTRINSIC EVIDENCE IN DEFENDANT'S MOTION

1. In the Introduction to the Motion, Defendant directs the court to 0:35 in the video attached to the First Amended Complaint in Doc. 18, Ex. A, and attaches its own screenshots of that video as exhibits to the Motion.  Doc. 19, Ex. 1.  Defendant claims that "you can see that Plaintiff's body is turned towards Hart and Plaintiff's arms are raised up."  However, the video and screenshots show no such thing. Rather, the video shows Plaintiff running from the fence line mentioned in Doc. 18, ¶ 10 to the road mentioned in Doc. 18, ¶ 12, perpendicular to Deputy Hart who emerges from the fence line a few seconds later.  The arm movements are consistent with Plaintiff's running motion and are inconsistent with any sort of implication that Plaintiff was pointing or motioning toward Deputy Hart.  Plaintiff's face and body are clearly facing the road and do not appear to turn toward Hart at any point in the

video or screenshots.  The video should be viewed in context, as screenshots of a dynamic scene can often be misleading.  When watched as a video, even in slow motion, the dashcam video clearly shows Plaintiff facing and running in a direction that is generally away from Deputy Hart at all times, and his movements and arm placement are consistent with that.  Doc. 18, Ex. A.  In the screenshot where Defendant claims the video shows that Plaintiff "raised his left hand in the air and pointed the gun at" Deputy Hart, Plaintiff's left arm is clearly pointed downward in a running motion, and no gun can be seen.  While Defendant is correct that Plaintiff's allegations do not have to be preferred over the video evidence, the video evidence does not show what the Defendant claims it does.  Doc. 18, Ex. A. Plaintiff's same running motion can be seen in the doorbell video at Doc. 18, Ex. B. Plaintiff is confident that the video evidence reinforces Plaintiff's version of events, but at worst, the interpretation of the video evidence is a genuine issue of material fact that should be presented to a jury and is not properly the subject of a dispositive motion.

2.  Defendant's Motion relies heavily on Deputy Hart's Harris County Sheriff's Office Voluntary Statement (Doc. 18, Ex. G) and Deputy Hart's statement to Detective J. Sanchez (Doc. 18, Ex. C) to contradict the factual allegations in the First Amended Complaint.  This is inappropriate for a 12(b)(6) motion to dismiss.  Those exhibits were attached to the First Amended Complaint for two purposes: 1) to provide a contextual background to the complaint, including Harris County's policy of covering up deputy misconduct; and 2) to demonstrate inconsistencies between

Deputy Hart's statements and the video evidence in Doc. 18, Exs. A and B.  In other words, Deputy Hart's statements were included *specifically to demonstrate that they were false and cannot be trusted*.  Deputy Hart's statements are not central to Plaintiff's claim and are being attached for a reason other than the truthfulness of their content.  Therefore, those exhibits should not be treated as true for purposes of a motion to dismiss.  *See, e.g., Haskett v. T.S. Dudley Land Co.*, 648 F. App'x 492, 496-97 (5th Cir. 2016) ("it would be perverse to use [defendant's] self-serving claims to reject [plaintiff's] factual allegations" merely because they were attached to the complaint); *see also Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) (holding that accepting a statement made by Defendant that was attached to Plaintiff's complaint as true "would deprive [plaintiff] of the presumption of truth to which he is entitled at this stage of the litigation.").  The court in *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 168 (4th Cir. 2016) explains:

> The purpose for which the document is offered is particularly important where the document is one prepared by or for the defendant. Such unilateral documents may reflect the defendant's version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff. Treating the contents of such a document as true simply because it was attached to or relied upon in the complaint, even though the plaintiff relied on it

for purposes other than truthfulness, would be contrary to the concept

of notice pleading and would enable parties to hide behind untested,

self-serving assertions.

*Id.* (internal quotations omitted).  To the extent that any part of Defendant's Motion

relies on Deputy Hart's statements in those exhibits, Defendant's allegations should

be treated as matters outside the pleadings and either excluded by this Court when

considering the Motion or treated as a motion for summary judgment under Rule

56.  Fed. R. Civ. P. 12(d).  Under Rule 56, the Motion must fail as a motion for

summary judgment because there are genuine issues of material facts that a jury

needs to resolve.  Fed. R. Civ. P. 56.  Specifically, the following factual allegations

made in the Motion are not included in the pleadings and are disputed by Plaintiff:

a. "In a known narcotics area" Doc. 19, Introduction.  This is biasing

   language that states a fact not in the pleadings.  Also, the existence of drugs

   in a community is not a reason to shoot a suspect.

b. "Hart noticed a gun in Plaintiff's left hand." Doc. 19, Introduction.  It is

   Plaintiff's contention that Plaintiff never held a gun during the entirety of

   this incident.  No gun can be seen in any video of the incident, even though

   Defendant contends that Plaintiff's "body [was] turned towards Hart and

   Plaintiff's arms [were] raised up", Doc. 19, Introduction, where a gun

   should have been plainly visible to the dashcam if it existed.  The video

   evidence does not support any assertion that Plaintiff possessed or

brandished a firearm, and Plaintiff's First Amended Complaint denies such an assertion.  Doc. 18, ¶¶ 12.a, 14, and 27.a.iii.1-2.

c.  "Hart pursued Plaintiff and yelled at him to 'drop the gun,' but Plaintiff did not comply."  Doc. 19, Introduction.  It is Plaintiff's contention that Deputy Hart never attempted to communicate, or if he did, he did so quietly and ineffectually, not "yelling."  No yelling can be heard in the video recordings.  Doc. 18, ¶ 13.

d.  "Hart told Detective Sanchez that Plaintiff had a gun and pointed it at him, twice." Doc. 19, Introduction.  It is Plaintiff's contention that Plaintiff never held a gun during the entirety of this incident, and so pointing a gun at Deputy Hart would have been impossible.  Doc. 18, ¶¶ 12.a, 14, and 27.a.iii.1-2.

e.  "At :35 in the recording, you can see that Plaintiff's body is turned towards Hart and Plaintiff's arms are raised up. Doc. 18, Ex. A. This is consistent with Hart's statement that as Plaintiff was running, he turned his upper body toward him, raised his left hand in the air and pointed the gun at him." Doc. 19, Introduction.  This interpretation of the video and screenshots is disputed (see paragraph 1 above), and also it is Plaintiff's contention that Plaintiff never held a gun during the entirety of this incident.  Doc. 18, ¶¶ 12.a, 14, and 27.a.iii.1-2.

f.  "Fearing for his life, Hart shot at Plaintiff in short succession, causing non-life threatening injuries."  Doc. 19, Introduction.  Plaintiff has alleged that

no reasonable police officer would have feared for his life or felt threatened in this situation.  Doc. 18, ¶¶ 15, 17, 17.b, 27.a.iii.1 and 3, and 30.a.  Also, not all of the shots were in short succession: there was a sizable delay between the fourth and fifth shots.  Doc. 18, ¶¶ 17 and 27.a.iii.3.  Furthermore, Defendant is implying that Deputy Hart did not use deadly force.  However, Plaintiff was taken to ICU after this incident, Doc. 18, Ex. F, which indicates a potentially life-threatening injury.  *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998) (holding that "guns represent the paradigmatic example of 'deadly force[.]'").

g.  "The video evidence shows Plaintiff turning towards Hart while he is fleeing and raising his hands in the air."  Doc. 19 ¶ 1.c.  Again, the video evidence shows no such thing (see paragraph 1 above).  Plaintiff alleges and the video evidence confirms that Plaintiff was facing the road and away from Deputy Hart at all relevant times in this incident.  Doc. 18, ¶¶ 12 and 27.a.iii.1.

h.  "Plaintiff agrees he was fleeing from Hart and does not dispute that there was a gun recovered near Plaintiff in the street where he fell."  Doc. 19 ¶ 1.c.  Plaintiff does dispute the implied conclusion Defendant is trying to draw from these facts.  Plaintiff understands that the crime scene photographs and Deputy Hart's statements indicate that a gun was at the scene after the fact, but Plaintiff disputes that the gun was "recovered" there or was ever in Plaintiff's possession.  Plaintiff disputes that he had a gun

11

during this incident.  Doc. 18, ¶¶ 12.a, 14, and 27.a.iii.1-2.  Given the lack of a gun in the videos of the incident, Doc. 18, Exs. A and B, and Deputy Hart's history of having a "throw down" gun in his possession, Doc. 18 ¶¶ 23.e. and 35.d.vi., a reasonable inference can be drawn that the gun "recovered" at the scene did not belong to Plaintiff and was never in Plaintiff's possession.

i.  "Plaintiff attached as evidence to his pleading the statements by Hart that Plaintiff aimed a gun at him twice, causing him to fear for his life and shoot at Plaintiff. Doc. 18, Ex. G. Based on what Plaintiff has presented to this Court with his Complaint, Hart's use of force was reasonable and not excessive."  Doc. 19 ¶ 1.c.  See the analysis above for why Hart's statements are not to be accepted as true for the Motion.  Plaintiff disputes that he ever had a gun or pointed one at Deputy Hart, Doc. 18, ¶¶ 12.a, 14, and 27.a.iii.1-2., and further contends that no reasonable officer would have feared for his life in this incident.  Doc. 18, ¶¶ 15, 17, 27.a.iii.1 and 3, and 30.a.

j.  "Also not similar is the 'throw down gun' for which Plaintiff (wrongly) contends Hart was terminated."  Doc. 19 ¶ 1.c.  Not only does Plaintiff have documentation directly form Harris County that Deputy Hart was indeed terminated for having a "throw down" gun in his possession (and subsequently brought back by a final policymaker), but Defendant is also flatly contradicting a factual allegation made in Plaintiff's pleading.  That sort of argumentation is inappropriate for a 12(b)(6) motion.  *See Taylor v.*

> *Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("When considering
>
> a motion to dismiss, the court accepts as true the well-pled factual allegations
>
> in the complaint and construes them in light most favorable to the plaintiff.")

3.  Defendant's entire Motion ignores the existence of the "fifth shot" referenced throughout the First Amended Complaint.  Doc. 18, ¶¶ 8, 17, 27.a.ii-iii, and 35.f.iii.  The fifth shot occurred separately after a significant delay from the first four shots and forms an alternative basis for Plaintiff's excessive force claim.  In addition to claiming that all of the shots fired by Deputy Hart were objectively unreasonable, Plaintiff alleges that the fifth shot alone was objectively unreasonable, violated Plaintiff's well-established constitutional rights, and was done with a conscious indifference to those rights.  Doc. 18, ¶ 27.a.iii.3.  To the extent Defendant tries to argue that Deputy Hart's actions were entirely reasonable without addressing the fifth shot, that argument must fail.

## VII.    ARGUMENT AND AUTHORITIES

Defendant's Motion states in several places that Plaintiff's First Amended Complaint contained "no factual support" or "failed to plead facts" concerning particular claims or elements.  For each claim at issue in the Motion, Plaintiff will demonstrate that he alleged specific, sufficient facts in the First Amended Complaint to support that claim.  A complaint survives a motion to dismiss if its facts, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Facial plausibility requires that the plaintiff "plead[] factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court's inquiry should focus on the complaint as a whole, "regardless of how much of it is discussed in the motion to dismiss." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012).  Therefore, a factual claim made anywhere in the First Amended Complaint should be considered a part of the complaint as a whole, and the Court's consideration of any particular claim or element should not be limited to only the factual allegations under any particular section or subsection.  The Court must consider the complaint as a whole.  *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss[.]").

## 1. Harris County is not entitled to dismissal of Plaintiff's claims for liability under *Monell*.

Defendant's reliance on *Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002) to establish "the high burden of showing custom" is misplaced.  The court in *Pineda* was considering a motion for summary judgment, not a 12(b)(6) motion to dismiss.  The plaintiffs in *Pineda* were only able to produce 13 semi-relevant cases *after* discovery had taken place.  However, the Fifth Circuit has made clear that "to survive a motion to dismiss, a complaint need not contain 'detailed factual allegations'; rather, it need only allege facts sufficient to "state a claim for relief that is plausible on its face." *Littell v. Houston Independent School District*, 213 F. Supp. 3d 849 (5th Cir. 2016) (*quoting Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  The Court noted in *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841 (S.D. Tex. 2011) that:

> [A]ll the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. . . .
>
> In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery.
>
> Accordingly, only minimal factual allegations should be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general.

*Id.* at 842-43 (internal citations omitted).

Even so, Plaintiff has alleged a widespread pattern or practice of the use of excessive force within the Harris County Sheriff's Office, and for illustrative purposes, shown a Department of Justice memorandum documenting the systemic use of unconstitutionally excessive force by Harris County Sheriff's deputies, seven highly publicized uses of excessive force since the memorandum, including two that involved Deputy Hart specifically (not including the incident with Plaintiff), and has alleged that more exist

among the thousands of excessive force complaints Defendant receives every year.  Doc.

¶¶ 23 and 24.  These examples were provided *before* discovery has taken place.  The list

of known excessive force violations in the First Amended Complaint was never intended

to be exhaustive.  As an illustration that Plaintiff's list was not exhaustive (and not for

purposes of converting this to a motion for summary judgment), other examples of the

widespread pattern or practice of excessive force in the Harris County Sheriff's Office

include:

1. In April of 2016, a Harris County Sheriff's deputy drew a gun on an unarmed

   Ashtian Barnes during a routine traffic stop for unpaid tolls, and then shot and

   killed Barnes while Barnes was still seated in the car.  Harris County intentionally

   sought a no-bill in this case.

2. In February of 2018, Sheriff's deputies shot at Matthew Cobb after he was

   handcuffed, resulting in the injury of an innocent bystander and the eventual death

   of Matthew Cobb.  During the investigation into this incident, the investigator

   obtained multiple pieces of evidence, including objective physical evidence, that

   clearly showed deputies were lying about multiple occurrences during the

   incident.  Investigators chose to ignore the objective evidence in favor of the

   deputies' statements in order to protect the deputies and the Harris County

   Sheriff's Office from liability and embarrassment.

3. In March of 2018, a Harris County Sheriff's deputy shot and killed Danny

   Thomas.  Sheriff Ed Gonzalez told news reporters that Thomas had "some object"

   in his hand and was "acting in an aggressive manner" and that the deputy "feared

for his life."  These statements were contradicted by video evidence.  Danny

Thomas was unarmed and foaming at the mouth.  The deputy did not attempt to

use non-deadly force to subdue him.  Sheriff Gonzalez later recanted and admitted

he did not see anything in Thomas's hand in the video.

4.  In April of 2019, a Harris County Sheriff's deputy was caught on camera beating a

still, mentally disabled individual in the back of an ambulance.  The deputy can be

heard on camera threatening to hurt the individual if he didn't stop "resisting"—

where video evidence shows he was not moving or speaking at all—and the

deputy boasted that he had hurt other detainees before.

5.  In April of 2020, a plain-clothed Harris County Sheriff's deputy shot and killed

Joshua Johnson, who was "armed" with a small BB gun but suspected of no crime.

6.  Also in April of 2020, a Harris County Sheriff's deputy tasered and brutally beat

Leandra Brandon in a gas station parking lot.  Brandon was only suspected of

being intoxicated, was unarmed, and had shown no violent tendencies.

7.  The widespread patterns and practices didn't end in 2020 with Plaintiff's injuries.

In February of 2021, camera footage shows a Harris County Sheriff's deputy

drawing a gun on motorist George Dickerson, who was pulled over, unarmed, and

had his hands in the air.  "I'll f------ kill you," the deputy can be heard saying in

the video.

8.  Also in February of 2021, Harris County Sheriff's deputies brutally beat inmate

Jaquaree Simmons while in a Harris County jail.  Simmons subsequently died.

*Eleven* employees within the Harris County Sheriff's office were fired over this

incident.  Sheriff Ed Gonzalez acted shocked.  "These 11 people betrayed my trust and the trust of our community. They abused their authority," Gonzalez said. "Their conduct toward Mr. Simmons was reprehensible. . . They showed complete disregard for the safety and wellbeing of a person they were directly responsible for protecting."  A reasonable jury could infer that a problem with eleven employees at once represents a systemic problem in hiring, training, and discipline.  Yet Sheriff Gonzalez continues to ignore the systemic constitutional deficiencies within his office.

9.  In July of 2021, Sheriff deputies were caught on camera violently beating an unarmed Ester Gonzalez, who was only suspected of misdemeanor trespassing. The Sheriff's office later acknowledged to Gonzalez's family that they were wrong in the way they acted.

10. In July of 2022, a Harris County Sheriff's deputy shot an unarmed Roderick Brooks in the back of the neck after Brooks was subdued and no longer fleeing. Brooks was only suspected of shoplifting soap, and the 911 dispatch had been told that he was not armed and that there were no dangers to deputies at the scene.

A reasonable jury could infer a widespread pattern or practice from the facts alleged in the First Amended Complaint, and therefore Plaintiff's allegation of a widespread pattern or practice of excessive force is plausible on its face.  Defendant's specific arguments against some of Plaintiff's illustrations will be addressed later in this response.

    For Plaintiff to prevail on his municipal liability claim, he must establish (1) a policymaker; (2) an official policy or custom; and (3) a violation of a constitutional right

whose "moving force" is the policy or custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

Plaintiff has clearly identified Harris County Sheriff Ed Gonzalez and Harris County District Attorney Kim Ogg as final policymakers whose policies, actions, and indifferences are at issue in the First Amended Complaint.  Doc. 18 ¶¶ 23.e, 35.b-f.  The first element is satisfied and not at issue in the Motion.

Defendant claims that "[t]here is no 'official policy' identified in the Complaint," Doc 19, ¶ 1, but this is false.  An official policy for purposes of § 1983 is "[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority." *Okon v. Harris Cnty. Hosp. Dist.*, 426 F. App'x 312, 316 (5th Cir. 2011) (citations omitted).  The decision to use TCOLE minimum standards in its hiring, training, and discipline is an official policy of final policymaker Sheriff Ed Gonzalez and the Harris County Sheriff's office.  Doc. 18 ¶ 24.h.  Plaintiff will address each of Defendant's arguments in the order presented in the Motion.


a. **Harris County's use of TCOLE minimum standards for hiring, supervision, disciplinary and/or retention decisions regarding patrol deputies like Hart. Doc. 18, ¶¶ 24(h), 35(e)**

Defendant argues that "Plaintiff has asserted no factual support for how state minimum standards for hiring, training, supervision, disciplinary and/or retention decisions have any causal relationship with the incident at issue in this case."  Doc. 19 ¶ 1.a.

However, Plaintiff alleged "[i]t is accepted in the policing community in Texas that departments that have widespread and chronic training and oversight deficiencies, such as those cited in the Report, have increased rates of excessive force" and "it is well known and accepted that . . . deputies in jurisdictions that have widespread and chronic training and oversight deficiencies have increased rates of excessive force."  Doc. 18, ¶¶ 24(h). This demonstrates a well-known causal link between TCOLE minimum standards and higher rates of excessive force.  For example (for the purpose of illustration, and not for the purposes of converting this to a motion for summary judgment), the nearby Houston Police Department provides over 400 additional training hours above the TCOLE minimum in training its cadets, and the Houston Mayor's Task Force on Policing Reform recommends expanded de-escalation training above TCOLE minimum standards, which it says "can help reduce the misuse of force."  The Sunset Advisory Commission's report noted TCOLE's "outdated basic training," "insufficient continuing education," and "outdated standards."   The report further indicated that Texas's law enforcement community, including law enforcement personnel, training providers, and agencies, "suggested [TCOLE's] training standards do not meet the needs of law enforcement," again showing that TCOLE's deficiencies are well-known.   Yet, despite the problems in TCOLE's minimum standards, including the causal link to an increase in the use of excessive force, the Harris County Sheriff's Office provides its employees with only the basic TCOLE certification courses.  In other words, Harris County accepts the known increase in excessive force as simply "the cost of doing business," demonstrating a deliberate indifference to the use of excessive force.

"To show deliberate indifference, a plaintiff normally must allege 'a pattern of similar constitutional violations by untrained employees.'" *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).  Plaintiff included evidence as part of the First Amended Complaint, from which a pattern of similar constitutional violations could be reasonably inferred, including multiple uses of excessive force by Deputy Hart, a DOJ report of the systemic uses of excessive force by Harris County Sheriff's deputies, thousands of excessive force complaints every year, and several specific cases of highly publicized excessive force incidents. Doc. 18 ¶¶ 23 and 24.

Defendant argues that "TCOLE is the governing state agency that licenses peace officers."  Doc. 19 ¶ 1.a.  However, this does not excuse Sheriff Gonzalez from using its minimum standards if they are constitutionally deficient.  It is widely held that, when the implementation of a state policy is discretionary, the adoption of that policy by local municipalities is a local policy for purposes of §1983 litigation.  *See, e.g., Cooper v. Dillon*, 403 F.3d 1208, 1222 (11th Cir. 2005); *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001); *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999); *Brotherton v. Cleveland*, 173 F.3d 552, 563-67 (6th Cir. 1999); *Doby v. DeCrescenzo*, 171 F.3d 858, 868 (3d Cir. 1999); *McKusick v. City of Melbourne*, 96 F.3d 478, 484 (11th Cir. 1996); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993), *cert. denied*, 114 S. Ct. 1219 (1994); *Hale O Kaula Church v. Maui Planning Commission*, 229 F.3d 1056, 1069 (D. Haw. 2002); *Allen v. Leis*, 154 F. Supp.2d 1240, 1263 (S.D. Ohio 2001); *Community Health Care Association of New York v. DeParle*, 69 F. Supp.2d 463, 475 (S.D.N.Y. 1999).

Further, Defendant claims that "TCOLE was not sunsetted." Not only is this irrelevant, it is also misleading. Hundreds of bills have been introduced in the Texas legislature since the date of the report to overhaul or replace TCOLE, and the 87th Legislature enacted at least three bills with new requirements for TCOLE to develop training on specific subjects, including the use of force. TCOLE's sunset was delayed by two years only so that the Sunset Advisory Commission could conduct a limited-scope review of its recommendations, and when TCOLE was up for renewal in April 2022, it was not renewed. TCOLE's fate will ultimately be decided in January 2023 when the Texas legislature next convenes to consider the Sunset Advisory Commission's recommendations.

A jury could reasonably infer that Sheriff Ed Gonzalez's official policy of using TCOLE minimum standards, despite knowing that it was likely to cause an increase in excessive force incidents, demonstrated a deliberate indifference to the Fourth Amendment rights of the citizens of Harris County, and that Plaintiff's injuries were caused by the inevitable increase in excessive force incidents that resulted.

**b. Deficient timely training, inadequate hiring standards, deficient discipline and retention policies, the minimal corrective actions in investigations of deputies. Doc. 18, ¶¶ 23(g), 35e(v).**

This is actually multiple factual claims that Defendant has rolled together so that Defendant could completely ignore one of them in the Motion. Plaintiff will address these claims separately here:

1. *Deficient training and inadequate hiring standards.*

Defendant's Motion claims "Plaintiff has alleged no facts to support any of these claims." Doc. 19 ¶¶ 1.b. However, Plaintiff has alleged that Harris County uses TCOLE minimum standards for hiring and training. Doc. ¶ 24.h. Plaintiff has further alleged that these minimum standards were known to be deficient and known to lead to increased incidents of excessive force. Doc. ¶ 24.h. By way of illustration, the Sunset Advisory Commission's report referenced in the First Amended Complaint, Doc. 18 ¶ 24.h, notes that TCOLE only requires 8 hours of de-escalation training, while the Houston Mayor's Task Force on Policing Reform recommends expanded de-escalation training to "reduce the misuse of force." Furthermore, even the TCOLE minimum standards require continuing education in de-escalation and use-of-force training, but Deputy Hart failed to complete his continuing education requirements and Harris County did not hold Deputy Hart accountable for that. Doc. 18 ¶ 23.g.

Defendant Harris County is placed in a double bind with regards to Deputy Hart's training here. Either it can argue that TCOLE minimum standards are adequate to prevent the use of excessive force, but that Harris County fails to enforce those standards because it did not require Deputy Hart to keep up with his training; or it can admit that failing to enforce TCOLE's continuing education requirements would not have prevented Deputy Hart's use of excessive force because that training is inadequate anyway. Either Plaintiff's injuries were caused by Harris County's inadequate training, or Plaintiff's injuries were caused by Harris County's failure to supervise and discipline. Plaintiff alleges both. Doc. 18 ¶¶ 23, 24, 35.c-f.

To the extent that Defendant argues that Plaintiff must allege a specific course of training within TCOLE that is inadequate, or offer a specific course of training that Defendant should have used instead, that is simply not the standard for analyzing the sufficiency of a complaint. *See Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841 (S.D. Tex. 2011) discussed above.

2. *Deficient discipline and retention policies and minimal corrective actions in investigations of deputies.*

Defendant doesn't address this basis for Plaintiff's *Monell* claim at all in the Motion, and therefore doesn't move for dismissal on this theory of liability. "Dismissal is improper if the allegations support relief on any possible theory." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) (quotation marks omitted) (quoting *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994)).

Plaintiff alleges throughout the First Amended Complaint that the Harris County Sheriff's Office failed to properly discipline its deputies, including Deputy Hart, for their repeated use of excessive force. Doc. 18 ¶¶ 23, 24, 35.c-f. Many of the allegations are quite specific, such as failing to discipline Deputy Hart after he used a rear choke hold on camera in violation of department policy, or failing to discipline Hart when he was involved in the tasing of a disabled woman in a wheelchair. Doc. 18 ¶ 23. In fact, Harris County also failed to discipline Deputy Hart for violating a myriad of other specific department policies, such as his failure to meet his continuing education requirements, his mishandling of evidence, and his failure to turn on his body camera. Doc. 18 ¶ 23. Beyond Deputy Hart, Defendant failed to discipline deputies when they beat up inmates, sicced a dog on

someone, or shot nonviolent unarmed suspects.   Doc. 18 ¶ 24.   There is a lack of accountability within the Harris County Sheriff's Office regarding the use of excessive force that gives deputies the impression that they can do whatever they want, which then leads to higher rates of excessive force.   Doc. 18 ¶¶ 17.c, 23, 25, and 35.d and f.   The Fifth Circuit has previously found that a refusal to reprimand or discipline known misconduct is a "subsequent acceptance" of the conduct that "tends to prove [the policymaker's] preexisting disposition and policy." *Grandstaff v. Borger*, 767 F.2d 161, 171–72 (5th Cir. 1985).   Consistent with that opinion, the First Amended Complaint alleged "[w]hen Harris County investigates its own employees and finds no wrong-doing, its policymakers are condoning the practices that were investigated and demonstrating its official policy of allowing those practices to continue."   Doc. 18 ¶ 24.b.   A reasonable inference can be drawn that there is a causal link between this lack of accountability, the high rates of excessive force seen within the Harris County Sheriff's Office, and the excessive force used in this case.

A municipality's failure to supervise or discipline its police force may be properly thought of as a city policy or custom that is actionable under § 1983 when the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact."   *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).   "Claims of inadequate training generally require that the plaintiff demonstrate a pattern of conduct." *Sanders–Burns v. City Of Plano,* 594 F.3d 366, 382 (5th Cir.2010).   In this case, there had been numerous instances of Harris County Sheriff's deputies using excessive force for over a decade, easily establishing a pattern.   Even if each of the deputies

referenced in the First Amended Complaint were all adequately trained, Harris County could have properly disciplined, fired, or reassigned the ones who repeatedly disregarded department policies so that at least the bad actors did not continue to violate the rights of the citizens of Harris County.  Instead, Harris County covers up for the bad actors like Deputy Hart, allowing them to stay on the job without reprimands, suspensions, reassignments, or fear of indictment.  Doc. 18 ¶ 23, 24, and 25.  To the extent that Defendant's Motion implies that Plaintiff is relying on a "single incident" to "infer a policy of authorizing misconduct," that is simply not the case.  Plaintiff is relying on repeated incidents spanning over a dozen years, and on information and belief alleges that far more exist than could reasonably be described in a complaint.  Doc. 18 ¶¶ 17.c, 23, 25, and 35.d and f

The decision not to discipline Hart for his prior excessive force incidents was made by Sheriff Ed Gonzalez, a final policymaker for Harris County, Texas, or by a person(s) who was delegated policymaking authority ability regarding investigations by a final policymaker.  In conjunction with Hart's prior uses of force, policy violations, and deceptive tactics, it was plainly obvious that the only way to prevent a future use of excessive was to either: 1) terminate Deputy Hart; or 2) reassign him to another role where the potential for the use of excessive force is practically non-existent, such as an administrative role.  That he remains on patrol to this day amounts to a deliberate indifference by Sheriff Ed Gonzalez to the rights of persons like Plaintiff with whom Deputy Hart would come in contact with.  Doc. 18 ¶ 35.d.

### c. Allowing the shooting of a suspect (excessive force) for merely being in possession of a firearm. Doc. 18, ¶¶ 27iii(2), 35(a).

Defendant claims that "Plaintiff points to no official policy and fails to allege facts that show a practice or pattern of Harris County authorizing deadly force for mere possession of a firearm." Doc. 19, ¶ 1.c.  Again, this is simply not true.  Plaintiff alleged that multiple deputies described the mere existence of a gun as a reason to "fear for our lives" (which is generally considered authorization to use deadly force) and as a reason to "go after him."  Doc. 18, ¶ 22.  Deputy Minchew called Plaintiff  "a dangerous person" without knowing if he had pointed a gun at anyone, simply because a gun was found near him.  Doc. 18, ¶ 21.  Deputy Hart used the existence of a gun as justification for shooting Plaintiff after he was already incapacitated.  Doc. 18, ¶ 17.  There would be no reason for Deputy Hart to want a throwdown gun if it would not be useful in defending against a claim of excessive force.  Doc. 18, ¶ 23.e.  The supposed existence of a gun is commonly used in Harris County, including by Sheriff Ed Gonzalez himself, to justify a deputy shooting a suspect, even if the "gun" is not a real gun, or the "gun" is actually something else in suspect's hands, or if there actually is nothing there at all (see the cases of Matthew Cobb, Danny Thomas, and Joshua Johnson described above for examples).  All of these factual allegations tend to show a practice or pattern of Harris County authorizing deadly force for the mere alleged possession of a firearm, and a reasonable inference could be drawn from these allegations that such a policy exists.  Given the standard described in *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841 (S.D. Tex. 2011) discussed above, this evidence of such a policy existing should be more than adequate to survive a motion to dismiss.  All of

Defendant's authorities on the required evidentiary standards deal with a motion for summary judgment and not a 12(b)(6) motion to dismiss, and should therefore be disregarded when considering the Motion.

The rest of Defendant's argument in section 1.c of the Motion rely on Defendant's poor interpretation of the video evidence or statements of Deputy Hart which should not be considered true for purposes of the Motion.  See Section VI above regarding the law on this issue.   Defendant tries to argue that Deputy Hart's actions were not objectively unreasonable as a result.  Doc. 19 ¶ 1.c. However, the facts alleged in the First Amended Complaint tell a different story.  Plaintiff alleges that he never had a gun or pointed one at Deputy Hart, Doc. 18, ¶ 14, did not raise his hands except in a running motion, Doc. 18, ¶ 14.a, never turned toward or faced Deputy Hart, Doc. 18, ¶ 12, and never showed himself to be a threat to anyone.  Doc. 18, ¶ 15.  When Deputy Hart shot at Plaintiff four times, hitting him in the back and legs, Doc. 18, ¶ 15, Deputy Hart violated Plaintiff's well-established Fourth Amendment rights under *Tennessee v. Garner*, 471 U.S. 1 (1985). Plaintiff fell and lay still on his back to surrender, with his empty hands clearly visible. Doc. 18, ¶ 16.  Deputy Hart approached Plaintiff and shot him for a fifth time in the stomach, which was an objectively unreasonable thing to do and clearly excessive to any need.  Doc. 18, ¶ 17.

Defendant argues that "Plaintiff has not sufficiently shown that the use of force was clearly excessive to the need and objectively unreasonable."  Doc. 19, ¶ 1.c.  However, Plaintiff did exactly that in the First Amended Complaint.  Plaintiff demonstrated that Plaintiff was only suspected of not wearing a seatbelt, was unarmed, and had not

demonstrated that he was a threat to anyone.  Doc. 18, ¶ 27.a.ii.  Deadly force is objectively excessive in that situation.  *See Tennessee v. Garner*, 471 U.S. 1 (1985).  Furthermore, there was clearly no need to shoot Plaintiff for the fifth time.  Doc. 18, ¶ 17.  Defendant's Motion completely ignores Deputy Hart's fifth shot while Plaintiff was clearly unarmed and already incapacitated.  Use of deadly force against an incapacitated suspect is objectively unreasonable.  *See, e.g., Bennett v. Murphy*, 274 F.3d133, 136 (3d Cir. 2002) (holding that when an armed suspect had "stopped advancing and did not pose a threat to anyone but himself, the force used against him, i.e. deadly force, was objectively excessive.")

Defendant further argues that "Plaintiff has not alleged or set forth any facts that Harris County has a pattern or practice of allowing excessive force."  Doc. 19, ¶ 1.c.  However, Plaintiff has alleged a widespread pattern or practice of the use of excessive force within the Harris County Sheriff's Office, and for illustrative purposes, shown a Department of Justice memorandum documenting the systemic use of unconstitutionally excessive force by Harris County Sheriff's deputies, seven highly publicized uses of excessive force since the memorandum, including two that involved Deputy Hart specifically (not including the incident with Plaintiff), and has alleged that more exist among the thousands of excessive force complaints Defendant receives every year.  Doc. 18 ¶¶ 23 and 24.  Plaintiff has further alleged that Defendant has done nothing to address these systemic issues or to adequately discipline the deputies that cause them.  Doc. 18 ¶¶ 23 and 24.  Thus, Plaintiff has set forth facts that Harris County has a pattern or practice of allowing excessive force.

**d. A systemic unwillingness to address use of excessive force. Doc. 18, ¶¶ 24(a), 35(c)**

Defendant argues that "Plaintiff vaguely contends that Sheriff Gonzalez should be aware of a 2009 DOJ Memorandum . . ."  Doc. 19, ¶ 1.c.  In fact, Plaintiff alleged that Sheriff Gonzalez has actual knowledge of that memorandum.  Doc. 18 ¶ 35.c.  That is not a vague contention.  Furthermore, it is plausible on its face that Sheriff Gonzalez has knowledge of that memorandum, as it was sent to Harris County policymakers and the Harris County Attorney wrote a 500-page response to it "in cooperation with the sheriff's office."  The Harris County Sheriff's Office oversees the jail.  Sheriff Ed Gonzalez is the final policymaker for the Harris County jail, and the officers at the jail are Harris County Sheriff's deputies.  There is simply no reason that he should not be aware of the actions of his employees within his jail.  And in fact, he is, as he publicly responds when an incident in the jail makes the news.

Defendant goes on to imply that the memorandum and several other cases mentioned are too old to be considered notice to Sheriff Ed Gonzalez of a problem in his department. Doc. 19 ¶ 1.d.  However, Plaintiff has alleged that Harris County has "made no changes to training, discipline, or supervision in response to these incidents." Doc 18, ¶ 24.b.  For example, the conditions at the jail have been the subject of multiple special reports that persist even to this day, and yet Sheriff Ed Gonzalez has done nothing to remedy them.  Therefore, if these examples were ever indicators of a widespread pattern or practice, that pattern or practice can be reasonably inferred to be ongoing.  Part of the

requirement for arguing a widespread pattern or practice is that the practice has been ongoing for a long time. And indeed, Plaintiff also alleges more recent examples, and alleges that the pattern and practices still continue to this day. Therefore, the age of some of the examples only serves to demonstrate that the final policymakers in Harris County have been deliberately indifferent to the rights of the persons with whom the Sheriff's deputies will come in contact, because they have had adequate opportunity to learn of the problems and make appropriate corrections, but have continually failed to do so. *See Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989):

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, *see Tennessee v. Garner*, 471 U.S. 1 (1985), can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights. It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are "deliberately indifferent" to the need.

Then, Defendant relies on *Peterson v. City of Fort Worth*, 588 F.3d 383 (5th Cir. 2009) and *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383

(5th Cir. 2005) for the proposition that "a pattern "requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Peterson*, 588 F.3d at 850.  Doc. 19 ¶ 1.d. Defendants indicate their belief that Plaintiff's evidence of prior excessive force cases are not similar enough to the present case to be worth considering.  However, this reliance is once again misplaced, on two grounds:

First, these cases are again with regards to motions for summary judgment, not motions to dismiss (as are all of the cases cited by the Defendant throughout the Motion). They deal with cases in which discovery has already occurred.  See the discussion of the *Thomas* case above for the appropriate standards with regard to a motion to dismiss. *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841 (S.D. Tex. 2011) (holding that "all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

Second, even if accepted as the controlling legal standard at this stage of litigation, Plaintiff meets the burdens imposed by those cases.  The case in *Peterson* does not turn on the issue of specificity, and "similarity" and "specificity" are not discussed in that case. However, the *Peterson* court hints that the prior incidents do not actually have to be *that* specific.  The cases that the court considered sufficiently similar in *Peterson* ranged from minor lacerations to broken bones; included kicking, punching, tasing, and kneeing, and including things like minor arrests, warrantless entries, and traffic stops. Those were all different from the plaintiff's situation, which involved an intoxicated welfare check that turned violent, and yet the court said they would all count.  *Estate of Davis* is even worse

for Defendant's claim.  There, the Court states that "the specificity required should not be exaggerated," and held that "in the case of excessive use of force, [we require] that the prior act have involved injury to a third party." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).  Plaintiff easily meets that burden, as each prior act alleged involves the use of excessive force and injury to a third party, which is also what Plaintiff complains of in the First Amended Complaint.

Plaintiff believes that the *Holman* case would be better precedent.  In *Holman v. Fairchild*, 564 F. Supp. 3d 531 (S.D. Tex. 2021), a woman suspected only of misdemeanor trespassing was roughed up and tased while sitting in a wheelchair, and she sued Harris County for excessive force under *Monell*.  To demonstrate that Harris County had a widespread practice of excessive force, the plaintiff's expert offered "a 2009 U.S. Department of Justice report detailing the use of excessive force in Harris County's jail, and a 2015 Houston Chronicle report investigating the use of excessive force in Harris County's jail. Plaintiff's Expert's second report indicates that there are at least seven incidents of excessive force that occurred between 2014 and 2016.  The methods of excessive force described in this report include tasing, punching, pushing, using a prone and hog-tied position, slapping, and kicking." *Id*. at 540 (internal citations omitted).  Harris County moved for summary judgment, arguing that "three of the cases cited by Plaintiff involve incidents at the Harris County Jail and [only] one case involves [a similar type of excessive force]." *Id*.  Harris County also argued that "the U.S. Department of Justice report and Houston Chronicle article focused on incidents at the Harris County Jail and are therefore irrelevant." *Id*.  This court disagreed, finding "that a reasonable jury could find

a custom and practice of using excessive force in the Sheriff's department." *Id*. The Court denied Harris County's motion.

The *Holman* case is markedly similar to the present case. A Harris County Sheriff's deputy, suspecting a free citizen of a non-violent misdemeanor, resorted to excessive force the very moment that arresting the suspect became a little difficult. In *Holman*, the plaintiff only had a little over a minute from being told to leave to being arrested for trespassing, and when it was difficult for deputies to put her arms around her back, the deputies tased her. In the instant case, less than 10 seconds elapsed between Deputy Hart getting out of his cruiser and him shooting the Plaintiff simply because Plaintiff was fleeing. In both cases, the deputy in question used excessive force as an early, almost immediate option, and then used force again even after the suspect was subdued. Finally, in both cases, Defendant ratified the deputies' actions and refused to discipline the deputies after the incident.

Based on the *Holman* standard, this court should deny the Motion. The incidents in the jail and the incidents involving other types of force are not sufficiently different enough for Sheriff Ed Gonzalez to be able to reasonably claim that he did not have knowledge of the widespread use of excessive force within his own departments. The deputies in the jail and the deputies on patrol each received TCOLE minimum training. They follow the same disciplinary procedures for misconduct. They report to the same final policymaker. Until recently, Sheriff Ed Gonzalez's responses to both was to sweep the excessive force under the rug and bury his head in the sand, in deliberate indifference to the rights of persons under his protection.

In fact, Defendant doesn't even try to argue that Sheriff Gonzalez did not have notice of excessive force within the Harris County Sheriff's Office, nor that most of the incidents cited by Plaintiff are indeed examples of excessive force. Defendant also doesn't argue that the Sheriff's Office adequately trained or disciplined anyone in response to any of the excessive force incidents identified by Plaintiff. Defendant effectively concedes, for purposes of the Motion, that Defendant had "a systemic unwillingness to address use of excessive force" which Defendant claims to be responding to in this section of the Motion. Essentially, Defendant's sole argument in this section of the Motion is that Plaintiff's complaint should be dismissed because the Sheriff's deputies use a variety of excessive force techniques in a variety of places. By the standards described in *Peterson*, *Estate of Davis*, and *Holman* above, Defendant's Motion should be denied.

e. **Seeking a no-bill from a grand jury when a deputy has used excessive force.**
   **Doc. 18, ¶¶ 25, 35(b).**

Defendant claims that Plaintiff has contended that "a decision to seek a no bill" is one "by a Harris County policymaker" "without any factual support." Doc 19, ¶ 1.e. This is because this is not a factual question, it's a legal one. *See Groden v. City of Dall.*, 826 F.3d 280, 284 (5th Cir. 2016) (holding that the "policymaker" element is a "a legal question that need not be [pleaded]" to survive Rule 12(b)(6).).

"A policymaker is an employee 'whose responsibilities require more than simple ministerial competence, whose decisions create or implement policy, and whose discretion in performing duties or in selecting duties to perform is not severely limited by statute,

regulation, or policy determinations made by supervisors.'" *Wiggins v. Lowndes Cty.*, 363 F.3d 387, 390 (5th Cir. 2004) (quoting *Stegmaier v. Trammell*, 597 F.2d 1027, 1035 (5th Cir. 1979)). "Both Texas and federal courts recognize that prosecutors have broad discretion in deciding which cases to prosecute. Thus, '[i]f the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether to prosecute and what charge to file generally rests entirely within his or her discretion.'" *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004) (quoting *State v. Malone Serv. Co.*, 829 S.W.2d 763, 769 (Tex.1992) and *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

The question whether an official or employee is a local government's final policymaker is a question of state and local law. *Jett v. Dallas Independent. School Dist.*, 491 U.S. 701 (1989).  It is clear that district attorneys are final policymakers in Texas. *See Crane v. Texas*, 759 F.2d 412, 429 (5th Cir. 1985) (holding that a county district attorney is a final policymaker for purposes of §1983 "in those areas in which he, alone, is the final authority or ultimate repository of county power . . ."). There is no question that, when choosing what evidence to present to a grand jury and what charges to file, the prosecuting attorney has ultimate authority and is thus the final policymaker.

Defendant does not dispute that District Attorney Kim Ogg is a final policymaker within Harris County who exercises investigative powers and prosecutorial discretion, despite Plaintiff's contention that she is.  Doc 18, ¶¶ 35.b.i and 35.f.ii.  Defendant further presents no legal authority explaining why the county district attorney with ultimate responsibility on how to prosecute a case should not be considered a policymaking

authority.  A choice among alternatives, such as whether to seek a no-bill or true-bill, by a municipal official with final decision-making authority may serve as the basis of municipal liability.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

Defendant further contends that there is "no causal link," that a post hoc no-bill cannot possibly be the moving force behind Deputy Hart's use of excessive force, and that Plaintiff has not identified a pattern, practice, or custom.  Doc 19, ¶ 1.e.  However, a pre-existing pattern of no-bills can be reasonably inferred to be a "moving force" of Deputy Hart's actions, and Plaintiff alleged so ("knowing that Harris County has such a policy or custom was a moving force behind Deputy Hart's actions in this incident.").  In not a single one of the excessive force incidents identified in Plaintiff's complaint was the deputy at issue true-billed, demonstrating the pattern of seeking a no-bill.  Plaintiff's discussion of intentionally seeking a no-bill was intended to show ratification (discussed below) and the lack of accountability within the Sheriff's office (discussed above).  Doc 18, ¶ 35.b.ii.  That lack of accountability encouraged deputies to use excessive force and led to Plaintiff's injuries.

f. **Failing to hold deputies accountable for violations of departmental policy "condones and encourages excessive force." Doc. 18, ¶¶ 23, 35(d).**

Defendant claims that Plaintiff's allegations are "vague" and "not similar" and that Plaintiff "fails to provide facts and any causal link."  Doc 19, ¶ 1.f.  Plaintiff's allegations are not vague, and Defendant demonstrates this by immediately referencing the specific incidents of excessive force alleged in the First Amended Complaint.  Deputy Hart was

involved in the tazing of a woman in a wheelchair, a case in which Hart was named as a

defendant and in which Harris County ultimately settled.  Deputy Hart put a suspect in a

rear choke hold on national television, in footage that was reviewed and approved by Harris

County before it was aired.  Defendant doesn't explain why these other uses of excessive

force are "not similar."  They are both very similar.  They each involve Deputy Hart and

the use of excessive force against unarmed, non-resisting suspects.  The *Holman* case was

discussed in detail above, but the "Cops" episode is also similar.  In it, Deputy Hart applies

a rear choke hold against a formerly-fleeing suspect who has already been neutralized and

is not resisting.  Not only was the choke hold excessive to the need, like the fifth shot

alleged by Plaintiff, but Harris County specifically forbids choke holds, and states in their

use-of-force guidelines that "[t]he HCSO does not condone, or provide any training in the

use of, any chokehold or neck restraint."  It is referred to by the Harris County Sheriff's

Office as "unreasonable force."  And yet, despite the chokehold being caught on camera,

Harris County did nothing in response.  Instead, Deputy Hart got his 15 minutes of fame

on TV with no consequences.  The causal link between a lack of enforcement of department

use-of-force policies and future excessive force incidents can be reasonably inferred.

Defendant further claims that the many instances of Hart failing to follow

department policy were vaguely alleged and not causally linked to Plaintiff's injuries.

However, these other failings were specifically alleged and not vague. Doc. 18, ¶ 23

(summarized later in the First Amended Complaint as "other §1983 claims against him for

the use of excessive force, numerous complaints from suspects about his use of excessive

force, consistent failures to turn on his body camera, failures to submit evidence in

investigations, intentional deception when making reports about his use of force, failures to timely complete his required continuing education, and possession of a throw down gun in his cruiser."). Doc. 18, ¶ 35.d.  The causal link was alleged as follows: "Harris County's minimal corrective actions . . . caused Deputy Hart to believe that Harris County is supportive of Deputy Hart when he fails to follow proper procedure," Doc. 18, ¶ 23.c, and "encourages Deputy Hart to continue using excessive force knowing he will not be held accountable for his actions."  Doc. 18, ¶ 23.e.

## 2.  Plaintiff stated a claim for ratification against Harris County.

Defendant claims that ratification cannot support a claim for municipal liability because there is no causation, and further that there is insufficient evidence of ratification. Doc. 19, ¶ 2.

First, with regards to the causation claim, Defendant has mischaracterized or misunderstood the law on this issue.  Ratification is an alternative basis of liability in a *Monell* claim and does not require causation.  *See Young v. Bd. of Supervisors of Humphreys Cnty.*, 927 F.3d 898, 903 (5th Cir. 2019) ("One way of establishing liability is to show that a policymaker ratified the acts of a subordinate.") and *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").  These standards would be impossible under Defendant's theory.  Defendant relies entirely on *Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004) for the proposition that ratification still requires causation,

but the Court in *Milam* does not say that.  Nowhere in the *Milam* court's discussion of ratification is causation mentioned at all, except to point out that *municipal liability* must be "causally traceable" to policymakers.  This is satisfied by ratification because the final policymaker has adopted the subordinate's actions as their own.  The Fifth Circuit clarified this recently in *Young v. Bd. of Supervisors of Humphreys Cnty.*, 927 F.3d 898 (5th Cir. 2019), when it considered only a claim for ratification on appeal from a jury trial.  Making no mention of causation at all, the Court affirmed the jury's finding of municipal ratification, holding that a municipality's vote to proceed with a condemnation hearing was a ratification of the initial condemnation posting.  *Id*. at 904.  The Court noted that the municipality was not required to specifically ratify the employee's actions or the reasons supporting it; voting to proceed with the action was enough.  *Id*.  The *Young* Court also clarified the "sufficiently extreme" requirement that Defendant points to in the motion, stating that a fact pattern is "sufficiently extreme" when the municipality ratifies "an obvious violation of clearly established law." Id. at 903 (*quoting World Wide St. Preachers Fellowship v. Town of Columbia* , 591 F.3d 747, 755 (5th Cir. 2009)).

Plaintiff has alleged that Deputy Hart violated clearly established law because Plaintiff was shot in the back while posing a threat to no one, and then shot again when Plaintiff was incapacitated and surrendering, Doc. 18, ¶¶ 23, 24, and 30; that this violation was clearly established by video evidence, Doc. 18, Ex. A; that Harris County reviewed the video as part of its investigation, Doc. 18, ¶ 25, and then subsequently chose not to recommend corrective action for Deputy Hart.  Doc. 18, ¶¶ 23 and 25.  The *Milam* case

Defendant relies on states that failing to take disciplinary action in response to clearly illegal police activity is evidence of ratification. *Milam*, 113 F. App'x at 628.

With regards to the argument that there is insufficient evidence, Courts have held that ratification can be demonstrated several ways. The Fifth Circuit in *Milam* explained:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Id*. (*quoting City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). It is noteworthy that Defendant's standard of "simply [going] along with a subordinate's decision" and "good faith statements made in defending complaints" does not apply here. Defendant did not simply go along with Deputy Hart's version of events without question in this case. Rather, Defendant engaged in a two-year review of Deputy Hart's actions, and Defendant claims that Harris County determined that "the evidence did not support a finding of misconduct[.]" Doc. 19, ¶ 2. In other words, if Deputy Hart is found to have committed a clear constitutional violation, Defendant's decision after this investigation should serve as a ratification of that violation.

Defendant claims in the Motion, and Plaintiff agrees, that Harris County did a thorough review of Deputy Hart's actions and *did not* simply rely on Deputy Hart's version events. They watched the videos, took statements, and collected evidence, and ultimately concluded that there was no wrongdoing. This is a clear example of the *Milam* court's standard that "a subordinate's decision is subject to review by the municipality's authorized policymakers," and the "policymakers approve[d] a subordinate's decision and the basis for it[.]" *Milam*, 113 F. App'x at 628. This is distinguishable from Defendant's reliance on *Peterson*, where an officer was not disciplined because the policymaker had not investigated the officer's actions. Plaintiff has not made a claim for failure to investigate. Plaintiff has alleged that Defendant has investigated itself in each instance of wrongdoing referenced in the First Amended Complaint, Doc. 18, ¶¶ 23.c, 24, 25, 35.d.ii., 35.f.iii and vi., but found no wrongdoing. Plaintiff's claim for ratification was stated as follows: "[w]hen Harris County investigates its own employees and finds no wrong-doing, its policymakers are condoning the practices that were investigated and demonstrating its official policy of allowing those practices to continue." Doc. 18, ¶ 24.b. This is consistent with the standard stated in *Milam*. The one investigative exception is the Cops episode, where Defendant had access to and actual knowledge of the footage of a violation of department policy, but chose not to investigate. Doc. 18, ¶ 23.b.

Plaintiff notes that Defendant had good reason to not blindly follow Deputy Hart's version of events, such that even if Defendant was somehow simply following Hart's version of events after a thorough two-year investigation, that was "manifestly indefensible," in bad faith, and a clear attempt to shield both Deputy Hart and Harris

County from liability.   Hart's statements were blatantly inconsistent with the video evidence and the crime scene.  In fact, Hart's version violated the laws of physics—Hart swore under oath that the fifth shot was at Plaintiff's back while Plaintiff was face down on the ground, Doc. 18, Ex. G,, and yet Plaintiff somehow sustained an injury on the front of his stomach as a result.  Doc. 18, ¶ 17.b.  As a result, Defendant ratified Deputy Hart's conduct when they chose not to discipline Hart and chose to seek a no-bill for his clearly illegal conduct.

Finally, ratification of the decisions of a subordinate by an official with final decision-making authority can be evidence of a municipal policy for purposes of liability under §1983.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) (holding that "refusals to carry out stated policies could obviously help to show that a municipality's actual policies were different from the ones that had been announced."); *see also Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004) (holding that "the failure to take disciplinary action in response to an illegal arrest, when combined with other evidence, could tend to support an inference that there was a preexisting de facto policy of making illegal arrests: the policymaker did not discipline the employee because, in the policymakers' eyes, the employee's illegal conduct actually conformed with municipal policy.").   Therefore, even if liability under an alternative ratification theory fails, ratification can also serve as evidence for a pre-existing policy which caused the injury, and is therefore an issue for trial.


**3.  Plaintiff is not barred from recovering punitive damages in this case.**

Punitive damages are available in §1983 claims.  In *Smith v. Wade*, 461 U.S. 30 (1983), the Supreme Court held that "[a] jury may be permitted to assess punitive damages in a § 1983 action when the defendant's conduct involves reckless or callous indifference to the plaintiff's federally protected rights, as well as when it is motivated by evil motive or intent." *Id.* at 30.  Plaintiff has alleged facts such that a reasonable jury could infer that Deputy Hart acted with reckless or callous indifference to Plaintiff's rights or with evil intent, especially with regards to the "fifth shot."  Doc. 18, ¶¶ 8, 17, 27.a.ii-iii, and 35.f.iii. Plaintiff should be allowed to pursue punitive damages against Deputy Hart.


## Conclusion & Prayer

The Court should not dismiss the claims against Harris County because Plaintiff has not failed to state a claim under Fed. R. Civ.P. 12(b)(6). His *Monell* claims does not fail because he has not made conclusory allegations and has not failed to show causal connections between his allegations and the alleged constitutional violation. Plaintiff has not failed to set forth facts to support a ratification claim against Harris County. Plaintiff is entitled to recover for punitive damages from Harris County. For these reasons Plaintiff requests the Court not dismiss any of Plaintiff's claims against Harris County with or without prejudice.


**Date: October 18, 2022**

**Certificate of Compliance**

This motion complies with the typeface requirements but does not comply with the type-volume limit of Judge Eskridge's Court Procedures 18 (b) and (c). This motion contains 12,280 words. Plaintiff has requested and Defendant Harris County has agreed to a time limit extension to Reply to Defendants Motion to Dismiss. This Response has been filed in order to comply with the current response time limitations, however, Plaintiff anticipates this court will allow seven more days for Plaintiff to reduce the type volume limit.

*/s/ David Bleakney*

**David Bleakney**

---

**Certificate of Conference**

I hereby certify that most of the matters contained in this Response to Motion to Dismiss have previously been addressed with counsel prior to the filing of said Response. Plaintiff did remove the state tort law claims as a result of the prior conferences. Plaintiff re-pleaded. Prior to filing this Response, counsel reached out with regard deadlines and Counsel for Defendant Harris County agreed to a seven day deadline extension.

*/s/ David Bleakney*

**David Bleakney**

**Certificate of Service**

I hereby certify that on October 18, 2022, a true and correct copy of the foregoing was served pursuant to the Federal Rules of Civil Procedure to:

**LAURA BECKMAN HEDGE**

Sr. Assistant County Attorney

**ATTORNEY-IN-CHARGE**

State Bar No. 00790288
Federal ID No. 23243
1019 Congress
Houston, Texas 77002
(713) 274-5137 (telephone)

Laura.hedge@harriscountytx.gov

**AMY MAGNESS VANHOOSE**

Sr. Assistant County Attorney Defensive Litigation
Harris County Attorney's Office 1019 Congress

Houston, Texas 77002

Amy.vanhoose@harriscountytx.gov

**ATTORNEYS FOR DEFENDANT HARRIS COUNTY**